IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

STEFANY VEGA DURON, a Minor, and
BRITTANY ELIZABETH VEGA DURON,
a Minor, by and Through Their Father and
Next Friend, MARTIN DURON ESPARZA,
and by and Through Their Next Friends,
TROY BROWN and CHRIS BROWN                                        PLAINTIFFS

vs.                                                                No. 4:17cv73-MPM-JMV

RON JOHNSON, Individually, and in His Official
Capacity as Director of the Mississippi Field Office
of the United States Immigration and Custom
Enforcement Division of the United States
Department of Homeland Security; and
DERRICK McCLUNG, an Immigration Officer
of the Mississippi Field Office of the United States
Immigration and Custom Enforcement Division
of the United States Department of Homeland Security         DEFENDANTS

**ORDER**

On May 30, 2017, the two minor plaintiffs in this case filed a complaint seeking for this court to enter an order enjoining defendants from removing their father Martin Duron Esparza, a citizen of Mexico, from the United States.[1]  In their complaint, plaintiffs assert that their father has been provided with written notice that he has until June 1, 2017, i.e. tomorrow, to leave this country.  Plaintiffs' complaint describes the severe personal hardships that the deportation of

---

[1] Thus, this court has had less than a day to consider plaintiffs' motion and the arguments raised therein.

their father would have upon their lives, and this court is certainly sympathetic to their plight. Nevertheless, having considered plaintiffs' arguments in their motion for Temporary Restraining Order, and at an emergency hearing held today to consider that motion, this court concludes that they have failed to submit precedent indicating that this court has authority to decide this matter.

Indeed, the government submitted authority at the hearing held this afternoon which appears to suggest that this court does not even have *jurisdiction* to decide this matter. In particular, the government cites Fifth Circuit case law which clearly held that:

> A United States citizen child's constitutional rights are not implicated by the deportation of a parent, even where a de facto deportation of the child would surely occur. *Gonzalez–Cuevas v. INS*, 515 F.2d 1222, 1224 (5th Cir.1975); *Perdido v. INS*, 420 F.2d 1179, 1181 (5th Cir.1969). Chavez's conclusional and unsupported allegations are insufficient to present a colorable constitutional or legal question. *Cf. Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990). Therefore, we lack jurisdiction to consider this claim in the instant petition for review. *See* § 1252(a)(2)(B)(i); *Falek v. Gonzales*, 475 F.3d 285, 289 n. 2 (5th Cir. 2007).

*De Chavez v. Holder*, 514 F. App'x 449, 451 (5th Cir. 2013). The Fifth Circuit's precedent in this context involves an application of 8 U.S.C. §1252(a)(2)(B), which provides in pertinent part that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

This court has had a very short period of time to consider the government's arguments and authority, but it does appear to indicate that it lacks jurisdiction to hear this matter.

This court therefore concludes that it does, in fact, lack jurisdiction to consider this matter, and it will accordingly not issue a formal ruling on the motion for TRO. Nevertheless,

2

this court has sufficient uncertainty about whether the rule stated above is a truly categorical bar,[2] that it will briefly note its impression that, even assuming that it has jurisdiction to decide this case, there are serious weaknesses in plaintiff's request for a TRO which would likely preclude it from being granted on its merits.

Indeed, even assuming for the sake of argument that a U.S. district judge might, in an appropriate case, enjoin an immigration removal in a procedural context similar to the one here, plaintiffs' motion fails to cite any cases in which district courts have actually done so, based upon the sort of constitutional claims which they assert in their complaint.[3] Before a temporary restraining order or preliminary injunction can be entered, the plaintiffs must clearly demonstrate:

---

[2]In so stating, this court notes that it is aware of certain cases such as the *Ortiz* decision discussed below, in which the merits of TRO motions were considered in contexts similar to this one.

[3]This court is aware of a recent decision in which a Hawaii district court refused to grant a TRO staying a Mexican citizen's removal from the United States. *Ortiz v. Sessions*, 2017 WL 2234176 (D. Hawaii May 22, 2017). In that decision, U.S. District Judge Leslie Kobayashi found that the petitioner had failed to demonstrate irreparable injury, noting that "the United States Supreme Court has recognized that '[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable.' Thus, 'the burden of removal alone cannot constitute the requisite irreparable injury.' " *Ortiz*, 2017 WL 2234176 at 4, *citing Nken v. Holder*, 556 U.S. 418, 435 (2009). However, in this matter, the government appeared to assume in oral arguments that the facts of this case would suffice to show irreparable injury.

This court notes that, in *Ortiz*, the case against removal was arguably stronger than the one here, since the petitioner in that case was being removed in spite of the fact that the United States Citizenship and Immigration Services ("USCIS") had yet to process a petition filed by a relative which would have allowed him to stay. *Id.* at 1. The petitioner in *Ortiz* alleged that the petition had been pending "beyond normal processing times," *id*, and this appears to have at least given him an argument that some procedural irregularity existed which justified a stay of removal. In this case, by contrast, plaintiffs concede that "Duron filed an application for stay of removal on May 10, 2017" and that "[t]his application for stay of removal was denied on May 12, 2017." [Complaint at 4]. Plaintiffs thus concede that their father has exhausted his legal remedies, and they are forced to rely instead upon arguments that have either already been rejected in immigration court or which are unsupported by authority.

(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from an injunction; and (4) that the injunction will not undermine the interest of the public. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). It appears to this court that there are serious weaknesses in plaintiffs' case with regard to the first of these four prongs.

This court concludes that, in order to demonstrate a substantial likelihood of success on the merits, it would be incumbent upon plaintiffs to provide it with authority arising from cases at least reasonably analogous to this one. In their motion, plaintiffs rely instead upon generalized constitutional principles, asserted in legal contexts very different from this one, which are of questionable relevance to this case. For example, plaintiffs rely heavily upon *Plyler v. Doe*, 457 U.S. 202, 220 (1982), which involved the right of children in this country to receive a public education, regardless of the immigration status of their parents. Plaintiffs also cite decisions which broadly support the importance of familial relationships and the rights of parents to rear their children as they see fit. *See e.g. Crowe v. County of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010). However, none of these cases are factually similar to this one, involving an application of immigration laws passed by Congress.

It further appears to this court that prior litigation involving Duron Esparza's immigration status would be a very serious obstacle to plaintiffs' claim in this case, were it to consider those claims on their merits. Indeed, in their complaint, plaintiffs make clear that their father had an opportunity to raise his personal hardship arguments before U.S. immigration judges but that he did not succeed in obtaining an order barring his removal. Specifically, plaintiffs allege that:

> Duron has made multiple attempts to obtain legal status in the United States, all of

4

> which have been futile. Of significance to this case, Duron made an application
> for cancellation of removal under the Immigration and Documentation Act. An
> immigration judge denied the application on the grounds of his (incorrect) finding
> that Duron had exceeded the allowable time for visits to Mexico.
> In the same opinion, however, the immigration judge found that Plaintiff Brittany
> Duron, due to "acute asthma," would suffer hardship by Duron's being deported
> to Mexico. (*See* Oral Decision of the Immigration Judge, attached hereto as
> Exhibit "A.") An affirmance of the immigration judge's opinion was issued on
> August 7, 2013. (*See* Decision of the Board of Immigration Appeals, attached
> hereto as Exhibit "B.")

[Complaint at 3-4]. Based upon this procedural history, plaintiffs acknowledge that their father "has exhausted all legal remedies available to him to avoid deportation," and yet this court has no authority to order anything other than legal remedies.

Thus, even assuming that this court has jurisdiction to hear this case, basic principles of *res judicata* and collateral estoppel would seem to preclude it from essentially overturning factual findings and legal rulings made by other judges, over whom it has no appellate authority. Plaintiffs argue that it would be arbitrary and capricious to order the removal of their father from the United States, and yet an immigration judge and the Board of Immigration Appeals have already determined that such is legally warranted. This court would be strongly disinclined to declare those judges' application of the law to be arbitrary and capricious, even assuming that it has the jurisdiction and authority to do so (which, it concludes, it does not).

This court has reviewed the Immigration Judge's order, which involved an application of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1182. That Act provides in pertinent part that:

> (1) IN GENERAL.-The Attorney General may cancel removal of, and adjust to
> the status of an alien lawfully admitted for permanent residence, an alien who is
> inadmissible or deportable from the United States if the alien-
> > (A) has been physically present in the United States for a

> continuous period of not less than 10 years immediately preceding
> the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 212(a)(2),
> 237(a)(2), or 237(a)(3), subject to paragraph (5) 2a/ 5/ ; and
> (D) establishes that removal would result in exceptional and
> extremely unusual hardship to the alien's spouse, parent, or child,
> who is a citizen of the United States or an alien lawfully admitted
> for permanent residence.

INA section § 240A(b)(1).

Thus, a showing of "exceptional and extremely unusual hardship to the alien's spouse, parent, or child" is but one of four legal showings required to support cancellation of a removal decision under the INA. In his ruling, U.S. Immigration Judge Charles E. Pazar agreed that the burden imposed by Mr. Duron Esparza's removal upon his daughter Britney (who has asthma) sufficed to establish the requisite degree of personal hardship under § 240A(b)(1), and he found that the second and third factors supported cancellation of removal as well. [Order at 13-14]. Judge Pazar nevertheless found, however, that Duron Esparza had not been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application" and that he therefore lacked a legal basis to order cancellation of removal. [Order at 14].

As quoted above, plaintiffs argue that Judge Pazar incorrectly found that their father had exceeded the allowable time for visits to Mexico, but the appellate immigration board found otherwise. In its order affirming Judge Pazar's ruling, the Board wrote that "[w]e agree with the Immigration Judge's determination that the respondent did not satisfy the continuous physical presence requirement for cancellation of removal." [Appellate order at 1]. In light of this appellate ruling, it was incumbent upon Duron Esparza to file whatever further appeals he had

6

available to him, but it appears that he failed to do so. Once again, plaintiffs concede that they have exhausted their "legal remedies" in this regard, and it therefore appears that this court lacks the legal authority to grant the relief which they seek, even assuming that it has *jurisdiction* to do so (which, it concludes, it does not). Given the facts of this case, this court would certainly urge that the government consider it a proper one for prosecutorial discretion, but it concludes that it lacks the legal authority to do more than make this request. Indeed, this court agrees with the government that it lacks jurisdiction to decide this matter, and it will therefore issue no formal ruling on the TRO and simply dismiss this case.

It is therefore ordered that this case is dismissed.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

So ordered, this, the 31st day of May, 2017.

/s/ Michael P. Mills
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI